are being recorded for the purpose of assisting us in writing any opinions that come out of these proceedings, and they are available to the public as well, so you need to know that. And you need to know that also because if you get away from the panel, from the podium, we lose your voice, and I know you wouldn't want that to happen. And I also would mention to you that rebuttal is for rebuttal only, and we don't expect you to bring up any new arguments in rebuttal that have not previously been addressed either by you or your opponent. With that, we'll call the first case of the day, and that's United States of America v. George Martinez. And Ms. Gassman, representing Mr. Martinez, we will hear from you. Before you proceed, I would also like to acknowledge our distinguished presiding judges, 35th anniversary on this bench here today. So E. Grady Jolly, presiding judge of this panel, celebrates 35 years of serving on this court today, and we thank him for that. Congratulations, Judge Jolly, and may it please the Court, Kayla Gassman for the appellant George Martinez. This case arises from the denial of a motion to suppress evidence and statements resulting from a search of Mr. Martinez's vehicle at an interior immigration checkpoint. The primary issue on appeal is whether the Border Patrol agent's smack or slap of the spare tire mounted on Mr. Martinez's vehicle was a search within the meaning of the Fourth Amendment. And under the Supreme Court's opinion in United States v. Jones, the answer to that question must be yes. The smack of the tire was a search. Jones applied a purely property-based analysis to hold that the installation of a GPS device on the exterior of a car and the use of that device to track the car was a search under the Fourth Amendment. And the rule that emerges from Jones is stated in Note 3 of that opinion when the Court says that where the government obtains information by physically intruding on a constitutionally protected area, a search has occurred. So there are three things that must be present. Constitutionally protected property, second, a physical intrusion by the government, and third, an investigative purpose. And I would also note that this is the exact same standard that the Court applied just a year later in Florida v. Jardines when the Court held that a dog sniff on the porch of a house was a search within the meaning of the Fourth Amendment. And stated again that when the government obtains information by physically intruding on persons, homes, papers, or effects protected by the Fourth Amendment for the purposes of gathering information, then a search has occurred. Is there really an expectation of privacy in a tire that you can see at a checkpoint crossing? I'm glad you asked that because this is a very important point. It's underneath, but go ahead. I'm sorry. The privacy rights analysis, the reasonable expectation of privacy analysis is not necessary to consider at all under Jones's property-based analysis. The Jones Court makes this very clear. They say it is absolutely unnecessary to consider privacy rights because the Fourth Amendment protects property rights independent of whether or not a person has an expectation of privacy in that property. Will you address whether there was probable cause regardless? Sure. Sure. There, in this case, first, I have argued that the, and I do continue to rely on arguments in my brief that the government waived the probable cause issue in the district court. But nonetheless, even on the merits, there was no probable cause here. The only facts that the government can point to are that Mr. Martinez and his passenger took drinks of beer as they approached the checkpoint. That's very unusual. They did say that was very unusual. Isn't that very unusual? It's not just that they said it. It is very unusual to be drinking beer as you approach a checkpoint. I think we can accept that's unusual based on what the agent said. Certainly, there was no contradictory testimony that that was common. The agent said it was unusual. But it's not indicative of drug trafficking. And the only other facts were that— Well, it is indicative of the fact that they were trying to distract the guards, is it not? That is what the agent said. So there's the drinking beer, which may have been a distraction. There's the fact that the vehicle had paper dealer tags. Then there's the fact that the vehicle was dirty. And the fact that the spare tire was muddy, according to the testimony, was to conceal the smell of what was in the tire. The agent does testify that that's why the dirty spare tire caught his attention. And so if you are an agent at the border and this kind of thing happens every day, people have a pattern from the beginning to the end. And he sees a perfectly clean car that has mud only on the spare. And this is a new car, is it not? It has a new tag. It has a tag on it, a paper tag. It was a relatively new car. I believe it was not brand new, but it had paper dealer tags. But in the end, it was a very clean car. Yes. Except for that, I mean, you don't think that that is compelling evidence that something was being concealed in that tire, spare, that the drivers of that car did not, were trying to conceal from the agents? So the, I think one additional fact to keep in mind is that it's undisputed there was a drug sniffing dog in the inspection lane that conducted a sniff prior to the agent hitting the tire and did not alert. Well, that's because the mud was effective. But if you're looking at the totality of the circumstance, I think there's also a fact to keep in mind. And I think one additional problem is that all of these facts are merely very generalized facts. They're not, there's nothing, there was nothing specific. For example, the government relies fairly heavily on Texas versus Brown out of the Supreme Court to support this probable cause argument here and says that the facts were conceptually fairly similar because they seized a balloon that the agent and the agents or the officers experienced he knew to commonly hold drugs and he had seen it before. And so it was a similar type of pattern type evidence that you're discussing, Judge Jolly. But the court specifically said the agent also saw vials of loose powder or vials and loose white powder in addition to an open bag of the balloons. So those, those facts are far more specific. Now this tire was protruding from the back. Is that correct? It was mounted under the truck, which is the normal place for a spare tire. Correct. But it wasn't protruding from the truck, from the body of the truck itself. I'm not sure I understand. Well in other words, it was not, the tire was not totally concealed under the vehicle. Am I incorrect about that? I think the testimony is clear. You could, he could see at least some of the spare tire from just standing behind the truck and looking at the truck, but that the tire is mounted on the vehicle. Why isn't the fact that the undercarriage is cleaner than the area near the spare tire, that itself is really suspicious. How would an undercarriage in wear and tear be clean and that the spare tire be not? So it is the part that's closest to the road, which was the point that was made in the district court. Right. That seems really suspicious. But the bumper was dirty and the spare tire was dirty. I think the issue, the issue that I have with that is that is, that is perhaps one fact that piqued the agent's attention. Perhaps he wanted to ask more questions to discover whether there was something going on, but I don't think that rises to the level of probable cause. What's your best case that that doesn't rise to the level of probable cause? We have a lot of cases about these stops and some would criticize us that say our cases are too lenient on probable cause. So I would wonder what your best case is. I actually would, would, I believe a lot of those cases deal with reasonable suspicion and not probable cause. And indeed, some of the cases that the government discusses deal with reasonable suspicion, which is a lower standard than probable cause. But I would point again, as I pointed the court to Texas versus Brown, I think is an illustrative comparison. That is the case that the government puts forward as a case that it's relying on heavily. I would also point the court to a case out of the Tenth Circuit that the government relies on called United States versus Lyons, which was actually fairly factually similar in that there was this kind of pattern type evidence where I believe it was the reverse that the, I think the truck was dirty while the spare tire was clean in that case. And there were fingerprints and tool marks on the tire. The tire was, the spare tire was bigger than the other tires on the vehicle, which indicated perhaps it was not, not being used as a spare, but for something else. And it was, I think, a different brand than the other tires. And there were other pattern type evidence that, that officers associated with drug trafficking, like a radar detector, air freshener. And so the court said, did not say that was probable cause. What the court said was that the defendants gave consent to a search of the back of the vehicle. Tell me why capping a tire is a trespass. So the, it's a trespass because it's a physical encroachment onto constitutionally protected property. So Jones states very expressly that a vehicle. What was the precise holding? I had, I was looking at that Jones case this morning and what is the precise holding of that case? Precise holding is not, not merely the fact that there was a trespass, but trespass and the way that it was used, the way the transponder was used. The holding I believe is that a trespass combined with an information gathering purpose is a search. And so in that case, if you read the case closely, the trespass was simply the attachment of the device to the vehicle, which was actually fairly brief and minimal. It just involved attaching the device. It was the use of the device that was the information gathering, which the court says we must have both for there to be a search, but you don't have to have both for there to be a trespass. Ms. Gassman, I'm with you on what the Jones case says. I think that you're interpreting it correctly because the other effects are specifically listed in the Fourth Amendment, the personal property, the car, the tire, and I agree with you. But the probable cause in, I've conducted as a trial judge a number of suppression hearings, and probable cause is generally not an event. It's a process. And we have this, and I'd like to, the scenario as I understand it, there was an agent that had been working at this as a border patrol agent for 8 years, obviously was experienced and obviously was looking for things that were different that were out of the ordinary, the dirt on the car, the mud, how it related. I think he articulated a very good case. Maybe not, that was not probable cause. Oh, look, the back of the car is dirty, the undercarriage is dirty, and the front is not. That's probably not probable cause. But what he did, and I don't want you to address my, what I think is what happened. He went from event to event to event, things that he saw, and worked his way up to the slap, which in my opinion I think is a search. But up to that point, he had, these other things had evolved, things that he had seen, the things that he articulated before the lower court. And it worked up not from just reasonable suspicion, but as it stepped up, as he ratcheted up, it became probable cause. And the slap was the least intrusive way he could have checked the tire out, noticing all the things he noticed that the other judges had pointed out about the tires. What do you think about that? That it was a cumulative effect of these things that he articulated that worked its way up to probable cause? So if I understand what you're asking, I think you're asking, perhaps there was not probable cause prior to the slap, but the slap was a... No.  There was probable cause prior to the slap. Prior to the slap, yeah. Because of these other things that had been articulated by the agent. This guy was not a babe in the woods. He'd been doing this eight years. And he understood that this was a, that drug smuggling is just a common occurrence on our borders, unfortunately. I understand that, and the agent's experience is a relevant factor. But here, I think the facts were simply too generalized. There was nothing specifically indicating drug trafficking. The agent did not even think he had probable cause, because he, they referred to secondary and got consent. They did not then think they had probable cause to search the entire vehicle. They requested consent to do that. Well, probable cause is a factual determination. It did, and this Court needs to determine whether or not he, in fact, did have probable cause. And we look at the facts. It doesn't matter what they call them. We look at the facts that were articulated fairly clearly by this agent in his testimony. But I do, I would also, I do think it is still important that there was a drug-sniffing dog that did sniff and that did not alert, which is part of the totality of the facts that you're looking at when you determine whether or not there was probable cause. That's correct. But it also adds credibility to the agent's testimony. If he would have, as occurs sometimes, they, they misstate facts in hearings. But this adds credibility, in my opinion, adds credibility, because he did not, he said, oh, yeah, the dog alerted when he, on the free air sniff. But he said no, the dog did not. And he looked at the other factors. Right. Well, the dog did not alert, which is a factor. The agent in this Court cannot simply look at only the facts that were incriminating. You also must consider the facts that were present that were not incriminating. And that, I think, is a very, is a very important fact that indicates there was, in fact, nothing in the tire. And I do understand there were some facts on the other side, but you also have to consider the facts that were there that were, that indicated there was nothing going on. What other than the free air sniff that was negative? Right, which is a primary way that the, the investigative technique that the agents used to determine whether there are drugs present is a drug sniffing dog. The drug dog did its job, did a sniff, did not alert. So that, I think that, that dispels some of the, some of the suspicion. I'm not arguing it necessarily dispels all suspicion, but it certainly dispels some and is a fact that must be considered. Because at this point, if this is probable cause, then Border Patrol agents will have probable cause to search vehicles at immigration checkpoints for drugs and spare tires, which is completely outside the purpose of an immigration checkpoint, simply if there's a clean vehicle and a dirty spare tire. I think that's far beyond what the Supreme Court has held is sufficient to constitute specific probable cause. I have two questions. First of all, have we had occasion to reconsider Munoz-Milchor following Jones? Have we ever, you know, we have a strict rule that we have to keep following our precedent unless it's very clear that the Supreme Court overrules us. And if we've considered it since then, and ever cited it since then, then we have to say that it still stands. So to my, to my knowledge, the Court has not addressed Munoz-Milchor since Jones, but I do think it is clear from what Jones itself says and what Bond itself says that Munoz-Milchor is no longer good law because there's intervening Supreme Court precedent. Okay. It has to be directly on point under our precedent. Well, I think it is directly on point. So first Munoz-Milchor deals only with privacy rights and the Jones Court is very clear that is a separate interest under the Fourth Amendment. The second question I had has to do with the consent. You know, we deal with whether there's probable cause at the time, but we also look at whether or not the subsequent consent was, was it tainted or not? Or was that, that would have led to all of this discovery anyway? Yes. And I think this, under this Court's case law, their consent did not purge the taint of the violation because the results of the search are what motivated the agent to request consent. And I've cited United States v. Hernandez in my reply brief, I believe, which was exactly that scenario where an agent had squeezed a suitcase in a luggage compartment outside the presence of the defendant. So the defendant did not know that that had happened and felt something suspicious and then requested consent. I have a question about that because Martinez did not challenge the voluntariness of the consent or argue that the consent was not an independent act of free will before the  Well, that's, the government bears the burden to prove that consent, subsequently given consent purges the taint of the violation and it was the government, in fact, who did not raise that issue in the district court. So there, there was no need for Mr. Martinez to testify about that when the government did not raise the issue on which it bears the burden of purging. Well, should we remand for that? I mean, in my opinion, the issue, that would be waived. If the government had an opportunity to address it the first time and did not raise the argument, I don't believe that they get an entirely second opportunity to raise new arguments in the district court. No, well, I mean, the district court did hear the argument with respect to consent. The defendant knew that that was an argument that was made and could respond to it. Well, the government also knew that we had said the search was illegal. And if the government believed that the consent purged the taint of the violation, it was their obligation to raise an issue on which they bear the burden of proof. But I also think some of this is beside the point, because I think under Hernandez, the case law is very clear that if what motivates the request for consent is the result of the illegal search, then the two are causally connected and the consent is not an independent act of free will. But it's actually, the district court, in fact, said in its order that it was based on what the agent heard when he slapped the tire, that he decided to continue to investigate, refer to secondary, and request consent. Thank you, Ms. Gassman. You've run out of time, I'm afraid. You have some time for rebuttal, though. Thank you. Ms. Baldwin, we'll hear from the government now. May it please the Court, I agree with Mr. Martinez that the circuit has not reconsidered Munez-Malcor following Jones, Bond, or Jardim. I disagree, though, that Munez-Malcor has been overruled by those cases. It remains good law and in a very factually similar situation, the Court determined that what happened in that case, the tapping of a propane tank, was not a search. And that holding remains good, even after the release. Well, I mean, more precisely, was it a trespass? It was a technical trespass. And the Fifth Circuit in that case did consider property interests along with privacy interests in making its holding the dispossession. So we held that the tapping of the tank is a trespass. Yes, a technical trespass. Well, and the Supreme Court pretty much disposed of the term technical trespass, did it not, in Jones? In Jones, and this is something that Mr. Martinez argues, that Jones held it was totally unnecessary to consider privacy. The property is a completely separate test that you can apply. But that's not quite what Jones holds. Jones holds it's not necessary in that case, given the extensiveness of the trespass. And the trespass in that case is talked about as a physical intrusion and a usurpation of property. It's co-opting private property. And so the trespass in that case was so egregious, it wasn't necessary to consider what is the privacy interest in this object, which if they had considered, the privacy interest in the exterior of the car is diminished. And that's very clear. You have a very significant trespass, a very significant trespass, and you have to consider that because the trespass was so egregious. Why did he slap the tire? I'm sorry? Why did he slap the tire? Well, this is an alternative basis on which this court can find, even if this was a search, it was supported by probable cause. All of these circumstances that the court has already addressed in terms of drinking beer as you approach primary inspection, the paper dealer tags, which in the appearance, the experience of the officer indicates this might be a throw down vehicle. Have you ever slapped a tire? I have kids that have certainly slapped tires. You've slapped tires? And I'm sure I slapped a tire as a child. Okay. But why did you slap a tire? Why would somebody slap a tire if it wasn't to conduct a search or to gain information about what's inside the tire? I don't go around slapping tires. As I understand your question, it's a what happens when you expose your private property to the world, as you do with your car when you drive it in public, leave it in a parking lot? Well, in the car, specifically enumerated in the Fourth Amendment, it's other effects? It is an effect, but not all effects are created equal. The home is first among equals. But when you talk about when an item of private property is in public, what we expect or allow other people to do to it, if you think about bond, bond was certainly an effect. It is not a trespass case. Even though trespass was addressed in the briefing, it is decided on privacy, not on trespass. So you're saying that our case survives the slap because it's such a minor technical trespass as opposed to Jones, which is such an intrusion. Right. So that Jones doesn't definitively overrule our case law. That's your first argument. That is my first argument. And then your second is that there's probable cause. Do you think you need to go on to that one? Sure. The probable cause, first of all, probable cause is a legal determination, not a factual one. So there's been no concession by the government below. The government may not have pressed it or argued it, but it was not conceded. And it is, the record has been well developed. There was an evidentiary hearing where the agents came. They could, the trial judge was allowed to make credibility determinations. And what the agent, the canine handler primarily in this case, what he testified to was a series of observed facts that to him, based on his pre-primary area, you have the dealer plates. And then most importantly, you have the appearance of the car, which given that the tires and the undercarriage were clean along with the body, but you have a very dirty bumper and spare tire. To him, that appearance said this has been an intentionally dirtied area. And he knows that spare tires are used to carry drugs and that mud is used to mask the smell. So he puts all of these things together that in isolation may not rise to the level of probable cause, but they present a picture that allows him then to dispel his suspicion, his probable cause, by hitting the tire to attempt to dispel it. And what he learns is it does not respond the way a tire normally responds. Well, I'm with you. All that is right. I agree with you that it's a buildup. You don't, first thing you don't do is, well, there's a spare tire under the car. Let me get my knife out and cut it open and see if there's contraband in there. You work your way up to that. And he articulated the facts that did that. But I still — are you saying your case stands or falls on whether there was not the probable cause issue, but whether or not it's okay to slap the tire? Does it fall or rise or fall on whether it was a search? Yeah. Is that the question? Yeah. It can go — the government can be affirmed — the ruling below can be affirmed either way. Either it was not a Fourth Amendment search, these Supreme Court cases did not overrule Munez-Melker, and this is just like Munez-Melker, or this was a search, but it was not an unreasonable search because of probable cause. Do we need to provide clarification for agents in the field by articulating whether or not this was a search? I mean, if this is a technique that's used? If this was — I extensively searched to find if this was something that was coming up a lot in the courts. If this was something that had given agents a lot of concern or you were presented with a case where someone was wantonly slapping tires. But in this particular case, you have the — all of the observed facts that spoke volumes to the officer. So it's clearly within the court's discretion how they want to approach it, but there is a way to approach that's narrowed to the particular circumstances of this case and can be affirmed for the ruling below. Did you waive the probable cause argument in the district court or intentionally relinquish it or somehow forfeit it? No, and the cases that are cited by Mr. Martinez are all very different. There are three Supreme Court cases — or two, actually — Jones and Stiegald, but Jones then cites to a case called Mercury Marine v. Spritzma. In all of those cases, the argument that was considered waived was raised in Supreme Court merits briefing, literally the last stop on the road. When did you raise the probable cause? When was that specifically raised before the district court? It was raised in the district court by Mr. Martinez himself. It was part of his argument. He had both to say this was a search, there was no probable cause. So the probable cause issue was focused in the district court. It just wasn't the basis of the district court's ruling, because he — But you were enjoined. You were joined that issue, and there was argument about it. Well, there was extensive factual development as to all of these observed facts that led to the search. Did you argue it or not? No. No. It was the trial AUSA who argued it. No, I'm asking, did the person who argued it, argued the case, say ever the words probable cause? And by the way, there's probable cause. I don't believe so. My memory of the record is that the AUSA who argued the case focused on Muniz-Melker and the lack of a privacy interest, and began on that threshold inquiry and asked the court to follow Muniz-Melker. Well, is the fallback, the next fallback about the consent, is it even more tenuously raised? Consent is an even harder issue because the factual development is not as extensive. Probable cause, there's extensive factual development below. Did you waive the consent argument? It was not directly presented. Not you personally. So it is — I think that Mr. Martinez has a stronger argument that that part has been waived. When was it presented? I'm sorry? When was the issue of consent presented in the district court? It was actually in the district court. It was discussed due to a standing concern, whether he had the right to consent to the search of his vehicle, given that the vehicle was titled under the name of a lender. So it was not — Who raised consent? I mean, did the government say he consented? I apologize. I've reviewed the record, and it's not exactly clear who brought that up, the standing issue, if it was something the defendant raised or the government. Well, I mean, if the defendant raised it, obviously somebody was charging him with consent, or otherwise I suppose he would not have raised an issue that might be contrary to his interests. But I don't know. People do strange things. Because this case was argued primarily was it was not a search in the lower court, and you'll see a lot of argument about that, it never progressed to the point where discussion was had about whether consent could dissipate if there was a taint, dissipate any taint from an unreasonable search. But in this case, the search was reasonable because of all of the elements, all of the visual observed facts that spoke volumes to the officer, and the search that occurred, if this was indeed a search, how narrowly tailored it was, in the least intrusive way, to investigate, to dispel the suspicion that all of these circumstances built up. And you understand that it makes our job much more difficult if the government has all these arguments it presents to us that aren't clearly presented in the district court. I understand the difficulty in that, and the possibility of if it's appropriate to remand for further factual development on consent. But in this case, the government is pressing that there was probable cause for the search. It's not an unreasonable search. Under the totality of the circumstances, with all of the suspicious circumstances, the public exposure of private property, I go back to the fact that Bond was a private property case, not decided on a technical trespass, but on privacy interests. And there are no privacy interests in a spare tire. A spare tire, as opposed to a carry-on bag, as in Bond, is not going to contain your medicine, your books, your eyeglasses, your papers. A spare tire contains air. And slapping a car may seem odd. It doesn't infringe on your privacy. And privacy remains important even when you're discussing the property test in Jones and Jardine's. They can't be completely decoupled. Jardine is a, in that case, the trespass is fairly minor, given that a dog sniff in another context is not even a search at all. So you have a minor trespass, but you have an area of heightened privacy concerns, the curtilage of the home, which is of paramount importance, as opposed to Jones, where the trespass is what's egregious, and where it happens is fairly minor. I mean, you're essentially saying that you cannot separate the two interests of privacy and trespass. They're interrelated concepts. Yes, Your Honor. But, I mean, Jones would not lead you to think that, necessarily. I mean, they relied so much on the fact that Jones and Jardine were trying to excuse cases that had rested on privacy interests. Jones and Jardine together, I think, would lead you to that conclusion. If you think about Jardine, they did discuss the knock-and-talk approach, when an officer goes onto a porch and knocks on a front door. That is a trespass in the sense that you're entering private property. But it is not a search in the sense you'd have to have probable cause to do it. An officer can go up and knock and try to talk to the owner of that property. So technical trespass on its own doesn't do all the work. It has to be, what does the government do and what is it doing it to, in what setting? And you think about all of those in context, Jones and Jardine and Bond don't answer what the Fifth Circuit handled in Nunez-Melker. It has not been upended by those cases. Because, I mean, I guess as you just said, trespass is not always a violation of the Fourth Amendment. That's correct. It's one, it's a part of the puzzle, but it's not on its own the answer. But what about trespass for the specific purpose of gaining information about a crime that may be committed? That's why he slapped the tire. The feeling of the bag in Bond was a tactile investigation designed to get information. It was not resolved as a trespass. In fact, the dissent in that case is from the author of Jones and Jardine. It was, Justice Scalia dissented in that case and would not have found that there was a search in the tactile examination of the luggage. You know, it's really a rather silly kind of thing we're arguing about in the sense that the ordinary person would think slapping a tire is not a search. I mean, how do we get to that point of taking some principles that are laid out in the Supreme Court to the point that we carry it to the ends that the average person on the street would think are absurd? That may indeed be true. And given the ubiquity when you are in public with your car, you leave your car exposed to so many different, how many times have we seen wash me written on the back of a dirty window? Your car gets touched. Your car gets handled. The outside of the car when you're in public. And I think that's an important factor to keep in mind when you're thinking about car versus carry-on luggage versus the curtilage of a home. These facts matter. It matters that this was a spare tire that was smacked. Unless there's anything else that the court would like to address, I would yield the rest of my time. I think you presented your argument well, Ms. Baldwin. Ms. Gassman? I just want to address a few of those points. So first of all, there was a discussion of I would actually point the court to Jones footnote 8, which actually says that technical trespasses do count as trespasses under the Fourth Amendment. It says not any technical trespass, but only those that infringe on persons, houses, effects, or papers, the areas enumerated by the Fourth Amendment of which a car is plainly in effect. Jones expressly said that. So even a technical trespass for the purpose of investigation on a constitutionally It doesn't have some kind of requirement of meaningful interference. In other words, you're saying essentially that if an officer is riding a traffic ticket and he leans, puts his hands on the car, he has trespassed. He has technically trespassed. That's not a search because he does not have an investigative purpose. But here, I want to address what specifically you're talking about. Well, he does have an investigative purpose. I mean, the trespass may not be. I mean, it's part of the totality of the circumstances, the trespass. I mean, he is trying to investigate asking this person for his driver's license and that sort of thing. But he's not physically intruding on the property to find out information. Physically intruding on the property. So I mean, he's slapping a tire, physically intruding on the outside of the car. Yes, because what he's doing is he's physically intruding. He's intruding on the property. Yes, he's physically intruding on the property. It would take a lawyer to say that, really, wouldn't it? Well, he's physically intruding on property to find out information about what might be inside it. And that, I think, is a quintessential search under the Fourth Amendment, is a physical touching by a government agent to find out information about what's on your person or what's in your property. You don't want to carry that just to its extreme conclusion. I mean, it's... My argument is it follows directly from Jones that they are concerned with physical touching of property for the purpose of investigation. Can you talk about Bond? Yes. So Bond, I think... The comments that opposing counsel made about the dissenting and, you know, the dissent and Bond and this and that, it's very interesting. So Bond, Jones and Jardines, I believe, kind of reignited this property-based analysis of the Fourth Amendment, which was not... And Bond was prior to that. So Bond did not address trespass or property rights, but I don't see how Bond could have come out differently if it were argued now under the Jones analysis, because it was a physical trespass onto constitutionally protected property for the purposes of finding out information about what was inside it. So even though the court didn't address property in that case, there's nothing indicating that it would have come out any differently if they had addressed property in that case. But based on this agent's experience at this border checkpoint in eight years with the Border Patrol, wouldn't you say that the slapping of the tire is, I concur, it's a technical trespass or a trespass, but wouldn't you also say that, as he articulated that it's an investigative technique, that, as I said, probable cause is a process and not an event? He works his way up to... At some point, you get to probable cause and all these other things that he observed, but wouldn't you say that it's an investigative technique also in addition to being a trespass, a very small, intrusive investigative technique? Sure, but all searches are investigative techniques. I don't think we can discount the need for probable cause just because it's a logical thing for the agent to do to continue to investigate. Probable cause, I agree, it's a totality of the circumstances, but I think there has to be some point at which the agent has probable cause prior to continuing the search. Assuming, we know the vehicle identification number that is inside the car on the dashboard, that you can read that and determine whether the car is stolen or whatever, and that is perfectly permissible within the Fourth Amendment, correct? But what if the officer leans on the car to look in to see, to get a clear view of that particular VIN, vehicle identification number? That transforms a perfect search into an illegal trespass. Is that your argument? I would point you to the Supreme Court's opinion in New York v. Class, which is actually almost on point with that. The identification number was covered by papers, and so the agent reached inside the window. I didn't say he reached inside the window. I'm just saying that he leaned on the outside of the car. That's what we're talking about. I think that would count. That's a trespass. It would, and the court said moving the papers was a search. Sure. Okay, hypo, where they touch the hood of the car to see if it's hot, if the person has really been home or whatever when they're told, you know, because they think the car's just pulled in. Is that a trespass? It is a trespass. Touching the hood of the car is a trespass. Well, they can feel that without touching the car as well. Okay. We have your argument, Ms. Gassman. You've done a fine job, and we appreciate your assistance to the court. We'll call the next case of the day in.